## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 25-cr-111 (APM)** |
| **v.** | |
| **DON CHASE,** | |
| **Defendant.** | |

## <u>GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that Defendant Don Diego Chase ("Chase") be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(C) and 3142(f)(1)(E).

Defendant Chase's criminal history is remarkable for its dangerousness, flagrant disregard for the law and the community, and repeated failures to comply with court-ordered conditions. The last time a court took a chance on Defendant Chase and released him to home detention and monitoring pending trial, Defendant Chase took advantage of that opportunity by leaving the home, either removing or tampering with his GPS device, and committing violent and highly destructive burglary and robbery sprees throughout DC and Maryland. What is more, based on the significant evidence in this case, he also used his ill-gotten freedom to illegally acquire and carry a loaded firearm as he engaged in narcotics trafficking, which are dangerous and serious offenses for which there is a presumption of detention. Given this history and considering the factors specified under 18 U.S.C. § 3142(g), there are no conditions or combination of conditions short of detention that can ensure the safety of our community or guarantee Defendant Chase's appearance in Court.

For the following reasons, the Court should order Defendant Chase detained pending trial.

## **BACKGROUND**

On July 24, 2024, Metropolitan Police Department (MPD) Third District Crime Suppression Officers Whitfield, Williams, and Rosa were in full uniform operating a marked MPD cruiser and wearing body-worn camera ("BWC").  Officers were performing routine patrols through the U Street Corridor of Northwest Washington DC when they came upon Defendant Don Chase on the 1900 block of 9th Street NW.  Defendant Chase was in possession of a satchel strapped across the right side of his body that appeared to be heavily weighted.  He was also carrying an unknown open beverage.

As the MPD Officers exited their vehicle to approach Defendant Chase and inquire about the unknown beverage and satchel bag, Officer Whitfield noticed Defendant Chase change his walking direction from northbound on the 1900 block of 9th Street to southbound on the 1900 block of 9th Street toward the 1800 block of 9th Street, subsequently blading the right side of his body away from the officers.

Officers also noticed that Defendant Chase became visibly nervous, to include darting his eyes back in the direction of the officers, and sped up his initial slow-packed walk into a powerwalk as officers continued their approach.  Officer Whitfield made conversation with those on the sidewalk, including Defendant Chase, asking the group if they were "headed up 9th Street."  Before the officers were able to make contact with Defendant Chase, he abruptly began running southbound on the 1800 block of 9th Street NW.  As Defendant Chase fled, officers observed that he appeared to be grabbing toward his waistband area.  Officers Whitfield and Defendant Chase initiated a foot pursuit, with Officer Rosa following.

As Defendant Chase attempted to elude the officers, Officer Rosa observed a black "L" shaped object fall from Defendant Chase to the ground.



*Still image from Officer Whitfield's BWC, showing firearm falling to the ground.*



*Still image from Officer Whitfield's BWC, showing firearm falling to the ground.*



***Still image taken from Officer Williams' BWC, showing firearm falling to the ground.***

Officer Rosa retrieved the object and confirmed it to be a firearm.



***Still image from Officer Rosa's BWC, showing recovery of firearm.***

After the firearm was recovered and numerous attempts to gain compliance of Defendant

Chase who was actively resisting arrest, officers gained control of Defendant Chase. Other Third

District Crime Suppression Officers to include Officers Wilson, Rider, Dawes, Kurland, and Selgas arrived on scene to assist placing Defendant Chase in handcuffs without further incident and place him under arrest.

During a search incident to arrest, officers discovered several different tablets of oxycodone to include:

| Drug | Description | Quantity | Total Milligrams of Oxycodone, a Schedule II Controlled Substance |
|---|---|---|---|
| 15 mg oxycodone-hydrochloride | Round tablets, stamped M and 15 | 304 | 4,560 |
| 15 mg oxycodone-hydrochloride | Oval tablet, stamped RP and 15 | 1 | 15 |
| 15 mg oxycodone-hydrochloride | Round tablets, stamped K and 8 | 214 | 3,210 |
| 10 mg oxycodone-hydrochloride | Round tablets, stamped K and 56 | 2 | 20 |
| 10mg oxycodone-hydrochloride | Round tablet, stamped RP and 10 | 1 | 10 |
| 10mg oxycodone-hydrochloride acetaminophen mixed | Round tablets, stamped RP and 10325 | 6 | 60 |
| 60mg oxycodone | Round tablet, stamped OP and 60 | 1 | 60 |
| **TOTALS** | | **529 tablets** | **7,935 mg of oxycodone** |

The identities of all drugs were confirmed through Drugs.com by Officers Rider and Dawes. Testing performed by NMS Labs of samples of each of the above-listed tablets later confirmed that they in fact contained oxycodone, a schedule II controlled substance.



*Drugs Recovered from Defendant Chase*

Defendant Chase was also in possession of $11,621.96 in United States Currency which was also discovered on his person and in his satchel.



***Photo of Currency Recovered from Defendant Chase***

The firearm recovered is a HS Produkt (imported by Springfield Armory) model: XDM, 9mm caliber pistol, bearing serial number MG794038.  The magazine inserted into the firearm had a capacity of 17 rounds and was loaded with 15 rounds of 9mm ammunition with 1 round in the chamber, totaling 16 rounds of 9mm ammunition.



***Photo of Black HS Produkt (imported by Springfield Armory) XDM Firearm,
Serial Number MG794038***



***Photo of Firearm, Magazine, and Ammunition Recovered***

A WALES/NCIC inquiry was conducted on the serial number affixed to the firearm and revealed that it was stolen out of Atlanta, Georgia. A records query revealed that Defendant Chase did not have a license to carry a firearm in the District of Columbia.

The records check performed at Defendant Chase's arrest revealed two extraditable warrants from Maryland, which are discussed further *infra*. Records also included a Look Out

alert from MPD Seventh District detectives explaining that Defendant Chase was a person of interest in an ongoing burglary investigation.

Following his arrest, Defendant Chase was presented on the drug and gun charges (Case No. 2024-CF2-7254, which will be dismissed in light of this matter) and a separate burglary spree case (Case No. 2024-CF3-7256). The magistrate judge found probable cause in both cases,[1] and Chase was held, again in both cases, without bond. After multiple continuances to facilitate plea discussions, on February 3, 2025 Defendant Chase rejected a global plea offer resolving the DC Superior Court cases. The burglary case is currently set for trial in June. However, it is also the United States' understanding that the burglary investigation is ongoing and additional charges are imminent.

On April 17, 2025, a Grand Jury for the United States District Court for the District of Columbia indicted Defendant Chase on violations of 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year), 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) (Unlawful Possession with Intent to Distribute Oxycodone), and 18 U.S.C. § 924(c)(1)(A)(i) (Using, Carrying, and Possessing a Firearm During, in Relation to, and in Furtherance of a Drug Trafficking Offense). At Defendant Chase's initial appearance in this Court on April 22, 2025, the United States orally moved for detention under the federal bail statute. The Court ordered the defendant held without bond pending a detention hearing, which was set for April 25, 2025.

---

[1] Initially, the Court found probable cause only for a residence burglary in which two dogs were stolen. Subsequently, an Amended Complaint and Supplemental Gerstein were filed in the burglary case charging Defendant Chase with two liquor store burglaries.

## LEGAL AUTHORITY & ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial.  18 U.S.C. § 3142(e).  When the basis for pretrial detention is the defendant's danger to the community, the government is required to demonstrate the appropriateness of detention by clear and convincing evidence, *United States v. Sabol*, 534 F. Supp. 3d 58, 65 (D.D.C. 2021), whereas a determination that an individual is a flight risk must be supported by a preponderance of the evidence.  *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019) (citing *United States v. Bortis*, 785 F.2d 327, 328-29 (D.C. 1986)).

The Act provides, however, that there is a rebuttable presumption for certain crimes that no conditions or combinations of conditions will assure the safety of the community.  18 U.S.C. § 3142(e).  Relevant here, qualifying offenses for § 3142(e) include an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (§ 3142(e)(A)), as well as an offense listed under 18 U.S.C. § 924(c) (§ 3142(e)(B)).   "For purposes of making that determination, a grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged."  *United States v. Taylor*, 289 F. Supp. 3d 55, 62–63 (D.D.C. 2018) (internal quotations omitted).

In making the pretrial detention determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f).  Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer.  *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).  Moreover, the government is not required to "spell out in precise detail

how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).  A pretrial detention hearing should not be used as a discovery device. *See Smith*, 79 F.3d at 1210 and *Williams*, 798 F. Supp. at 36.

1.    **The United States' Bases for Detention**

The United States seeks pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(C), because Defendant Chase is charged with a violation of 21 U.S.C. §841(b)(1)(C), which is an offense for which a maximum of ten years or more is prescribed in the Controlled Substances Act, and 18 U.S.C. § 3142(f)(1)(E), because Defendant Chase is charged with violations of 18 U.S.C. §§ 922(g)(1) and 924(c)(1)(A)(i), both of which are felony firearms offenses.  Finally, the United States notes that Defendant Chase also falls under § 3142(d)(1)(i), because he committed the instant offenses while on pre-trial release for a felony under federal, state, or local law (specifically, Prince George's County Case No. D-05-CR-23-019284).

Since Defendant Chase has been indicted on charges qualifying under § 3142(e)(3)(A) and § 3142(e)(3)(B), there is a rebuttable presumption in favor of pretrial detention.  The rebuttable presumption "'operate[s] *at a minimum* to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption.'"  *United States v. Lee*, 195 F. Supp. 3d 120, 124-25 (D.D.C. 2016) (quoting *United States v. Alatishe*, 768 F.2d 364, 371 (D.C.Cir.1985)) (original emphasis); *see also United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (the presumption requires the defendant to come "forward with some evidence that he will not flee or endanger the community if released") (internal quotation and citation omitted)).  As this Court has held, the defendant must present evidence to rebut the presumption. *Lee*, 195 F. Supp. 3d at 124-25.

Even if Defendant Chase presents evidence to rebut the presumption, the presumption does not disappear entirely. *Id.* at 125 (citing *United States v. Ali*, 793 F. Supp. 2d 386, 388 n.2 (D.D.C. 2011) (noting that the Bail Reform Act requires the Court to consider the rebuttable presumption as a factor even if the Defendant "produces credible evidence" to rebut it); *United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) ("[The presumption] is incorporated into the § 3142(g) factors considered by the court when determining whether conditions of release can be fashioned or whether the defendant must be detained pretrial.")). The rebuttable presumption remains as a factor that must be considered by the Court, because it "'reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.'" *Id.* (quoting *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010)) (emphasis added).

The United States respectfully submits that Defendant Chase cannot rebut the presumption in favor of pretrial detention.

**2. The Bail Reform Act Factors All Favor Detention Given Chase's Risk of Flight and Dangerousness to the Community**

When determining whether any condition or combinations of conditions will assure Defendant Chase's appearance and the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release. *See* 18 U.S.C. § 3142(g). As set out below, Defendant Chase committed the instant offenses while in violation of pre-trial home detention in a pending felony carjacking case in Prince George's County, Maryland. *See* Exhibit 1 (Maryland Judiciary Case Search Docket) and Exhibit 2 (Notice of Violation). Moreover, there is significant evidence that his dangerous and illegal actions on July 24, 2024, leading to the serious charges in this case, are

reflective of a much larger and longer pattern of violent criminal behavior.  Given these facts, there is clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community.  Further, while Defendant Chase's dangerousness to the community is the United States' primary basis for pre-trial detention, a preponderance of the evidence also supports a finding that no condition or combination of conditions will reasonably assure Defendant Chase's appearance as required.

### A.    The Nature and Circumstances of this Offense Merits Detention.

The nature and circumstances of the charged offenses weigh heavily in favor of pretrial detention in this case.  The Bail Reform Act explicitly identifies offenses involving firearms or a "controlled substance" as serious in nature.  *See* 18 U.S.C. § 3142(g).  Defendant Chase is charged with illegal possession of a loaded firearm outfitted with a large-capacity magazine, and significant amounts of a highly addictive and dangerous Schedule II controlled substance, oxycodone.  This Court does not need a reminder from the United States of the dangers inherent in armed drug trafficking in the District of Columbia or the devastation that both gun violence and opioids have wrought on this District.  Further supporting the seriousness of the offenses charged, if convicted at trial, Defendant Chase faces a lengthy term of incarceration, including but not limited to a mandatory minimum term of five years imprisonment for the 924(c) offense, to be imposed consecutive to his sentence on the firearm possession and drug offenses.

### B.    The Weight of the Evidence Against the Defendant is Formidable.

The second factor to be considered, the weight of the evidence, favors detention.[2]  The

---

[2] While some judges in this Court have indicated that this factor should be given less weight, in *Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors."  2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—

United States's case against Defendant Chase is considerable: the firearm falling from Defendant Chase's person is visible on multiple officers' body worn camera, and significant amounts of narcotics and United States currency were recovered directly from the Defendant and a bag on his person.  As this Court has noted, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *10 (D.D.C. Feb. 6, 2023), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).  Chief Judge Howell's warning in *Blackson* is particularly prescient given Defendant Chase's history and demonstrated willingness to flee to avoid court proceedings, which is discussed further below.  Accordingly, the strength of the evidence against Defendant Chase also weighs in favor of detention.

### C.    Defendant Chase's Violent History and Characteristics Merit Detention.

This third factor—the history and characteristics of the defendant—heavily favors detention.  Defendant Chase committed the serious offenses charged in this case (along with a litany of other alleged crimes currently charged in separate cases, discussed *infra*) while in violation of pre-trial home detention for a felony carjacking case still pending in Prince George's County, Maryland.  Underscoring Defendant Chase's risk of flight and dangerousness to the

---

in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

community, he is currently held without bond in a DC Superior Court burglary case and has not

one but two extraditable warrants from Maryland.

As the chart below summarizes and is explained further, Defendant Chase's criminal

history, pending felony cases, and repeated failures to comply with court-ordered conditions of

release are astounding.

| Case No. / Court | Charges | Status of Case | Documented Violation of Supervision? |
|---|---|---|---|
| 2024-CF3-7256 DC Superior Court | Burglary Two<br>Burglary Two<br>Burglary Two | Pending | No; held without bond since July 24, 2024 arrest |
| D-07-CR-24-2004 Anne Arundel Cty., MD | Armed Robbery<br>Robbery<br>First Degree Assault<br>Second Degree Assault<br>Firearm Used in Crime of Violence<br>Theft ($25,000-$100,000)<br>Handgun on Person<br>Handgun in Vehicle<br>Firearm/Drug-Trafficking Crime | Pending | N/a; arrest warrant issued July 17, 2024 |
| D-04-CR-23-1924 Prince George's Cty., MD | Second Degree Assault<br>Second Degree Assault<br>Motor Vehicle, Unlawful Taking | Pending | Yes; Violation of home detention and Failure to Appear warrant |
| CT180799X Prince George's Cty., MD | Reg. Firearm Illegal Possession | Conviction | Yes; Violation of supervision) |
| CT150125X Prince George's Cty., MD | Carry Handgun<br>Reckless Endangerment | Conviction | Yes (Violation of supervision) |
| 2014-CMD-014676 DC Superior Court | Attempted Theft Second Degree | Conviction (Youth Rehab. Act Set aside) | Unknown, likely no |
| 2014-CF2-014682 DC Superior Court | Flee Law Enforcement Officer | Conviction | No |

Most relevant in this case—since Defendant Chase possessed an illegal firearm in the moments before his July 24, 2024 arrest—Defendant Chase has two prior firearm convictions.[3] The first is a September 10, 2015 guilty plea in the Prince George's County Court, Case No. CT150125X, for carrying a handgun, for which he was sentenced to 3 years incarceration, with 18 months suspended and 5 years supervised probation; Mr. Chase also pled guilty to reckless endangerment, for which he was sentenced to five years incarceration, with 2 years suspended. Following his release from incarceration, Defendant Chase was repeatedly found in violation of probation, and bench warrants were issued in 2017 and 2018. On May 11, 2018, Defendant Chase was arrested for Illegal Possession of a Firearm, Case No. CT180799X, to which he pled guilty on December 13, 2018, and was sentenced to 5 years incarceration, with 1 year, 6 months and 5 days suspended, and 3 years' probation. The docket in Case No. CT180799X again reflects numerous Violations of Probation (VOP) and bench warrants following Defendant Chase's release from custody.

While still on supervision for Case No. CT180799X, on April 20, 2023, Defendant Chase was arrested in pending Prince George's County case number D-05-CR-23-019284. *See* Exhibit 1. The Statement of Charges explains that Defendant Chase accused his then-girlfriend (who at

---

[3] Although Defendant Chase's pending criminal cases and convictions provide the Court with ample cause to order pre-trial detention here given his risk of flight and dangerousness to the community, Defendant Chase's arrest record provides additional support for detention. In addition to the firearms convictions discussed above, Defendant Chase has been arrested in DC with a firearm on his person on two other occasions. On March 15, 2021, Chase was arrested with a loaded black handgun. Officers also recovered from his person $573.00 in cash and two bags of unmarked white pills and a white powdery substance, which field tested positive for opioids. On May 31, 2022, Chase was arrested with a loaded black handgun, $1,616 in cash, a white powder substance (suspected Fentanyl) and 13 pills (suspected oxycodone). Further, in January 2021, MPD officers executing a search warrant in Southeast DC arrested Defendant Chase and several others attempting to flee from the home. Officers recovered from the house a firearm, ammunition, cash, and various substances that field tested positive for cocaine, fentanyl, and oxycodone.

the time was pregnant with his child) and her ex-husband of stealing a handgun that he had "stashed" at her apartment and sent her threatening messages. She reported to police that when she became afraid for her safety and attempted to leave the apartment in a car with her children, he grabbed on to the car, violently pulled her out of the vehicle, and repeatedly assaulted her, including kicking her pregnant belly. He then drove off in her vehicle without authorization and against her will. Defendant Chase was charged with two counts of Second Degree Assault and Unlawful Taking of a Motor Vehicle. The case was set for trial in September 2023, and Chase was released pursuant to a private home detention monitoring agreement that included GPS monitoring. *See* Exhibit 1. Less than a month after his release, an extraditable warrant was issued for Mr. Chase's arrest. The in-home detention monitoring contractor reported possible GPS monitor "tampering" and that Defendant Chase's "whereabouts [were] currently unknown." *See* Exhibit 2. Defendant Chase's whereabouts remained unknown until his July 24, 2024 arrest and Maryland Judiciary case records reflect that case as still pending.

       **i.**    **Chase's Pending Charges for Numerous Burglaries While on Pre-Trial Release and in the Months Prior to his July 24, 2024 Arrest**

It is currently unknown how Defendant Chase used his first few months of freedom, but he was certainly not in compliance with home detention and failed to appear for trial. *See* Exhibit 1. What is more, there is substantial evidence that within seven months of fleeing from home detention, Defendant Chase participated in a highly destructive burglary spree of DC businesses and a residence. Three of those burglaries have been charged in pending DC Superior Court Case No. 2024-CF3-7256, *see* Exhibit 5 (JUSTIS Case Docket), and it is the United States' understanding that the investigation continues, and additional charges are forthcoming. To briefly summarize some of the evidence for these already-charged offenses:

- **January 20, 2024 Burglary**

  o **Location:** Ocean Front Liquors, 4682 Martin Luther King Jr. Ave. SW, DC

  o **Summary:**  Suspects entered via a hole that was cut into the roof of the building. Numerous items were taken, including lottery scratch tickets, over 60 cases of alcohol, approximately $4,900 from the cash register, and $8,000 from an office safe.  In addition, an estimated $28,000 was stolen from the store's ATM, which had been forcefully pried open.  Surveillance cameras recorded a suspect matching Defendant Chase's physical appearance who removed a glove while stealing cash from the ATM, revealing two distinctive tattoos on his left-hand matching those of Defendant Chase.

- **March 8, 2024 Burglary**

  o **Location:** Fort Drum Market, 4686 Martin Luther King Jr. Ave. SW, DC

  o **Summary:**  A suspect entered by cutting through the roof, and then used a power saw to cut open the ATM.  The suspect removed cash from the business' cash register and the store's safe was damaged in an apparent attempt to gain access.  MPD detectives identified Defendant Chase as a suspect via swabs of suspected blood collected from the scene.

- **June 21 & June 24, 2024 Burglary**

  o **Location:**  Residence, 2017 Savannah Terrace SE, DC

  o **Summary:**  MPD officers responded to a burglary complaint at a residence on June 21, 2024.  The complainant reported that her child's father, Defendant Chase, had broken into the residence while she was away and had taken interior security cameras before tossing items in the home around.  The complainant also provided to officers a grey and black backpack, stating that it did not belong to anyone in the home and must have

been left by Defendant Chase.  Inside of the backpack were a large amount of pill bottles, and the complainant relayed to officers that Chase had recently robbed a pharmacy (this robbery is discussed further below).

On June 24, 2024, officers responded back to the same residence, where the complainant advised that Defendant Chase had taken two dogs from the residence and had sent photos of the dogs along with threats about dropping one of the dogs out of his car if the complainant did not return some of Chase's clothing.  Chase also sent threats against the complainant and her mother (including "Ima shot your mother," "Pls dnt let me catch yu," "You no [sic] you done fr now right," "You not allowed on this side again" "You not allowed around and I no [sic] what car you in" and "You are done").

MPD is investigating Chase for additional DC robberies committed on December 19, 2023, and January 9, February 13, and February 17, 2024, which were perpetrated using the same modus operandi including entrance through a hole cut through the store's roof.

### ii. There is Significant Evidence Chase Participated in Violent Armed Pharmacy Robberies in the Weeks Prior to his July 24, 2024 Arrest

There is also credible and substantial evidence that Chase participated in violent armed robberies of pharmacies in the weeks leading to his July 24, 2024 arrest, where he was caught with a large amount of oxycodone.

First, Defendant Chase has been linked to an armed robbery on June 14, 2024, of Ramdass Pharmacy, located at 475 Ingraham Street NE in DC.  Pharmacy staff reported to MPD that they were held at gunpoint by two suspects who demanded controlled substances and money from the pharmacy.  A suspect matching Defendant Chase's physical appearance, including a unique tattoo of three stars on the side of his neck, entered the pharmacy, brandished a black handgun, and

threatened pharmacy staff to "lay on the ground and don't move or I will shoot you." The suspects stole cash and controlled substances including oxycodone and Percocet (oxycodone and acetaminophen mixed), and left the scene in a white BMW sedan with a damaged passenger's side mirror. MPD subsequently interviewed witnesses that stated Chase drove a similar BMW.

Approximately a month later, on July 17, 2024, the District Court of Maryland for Anne Arundel County issued an extraditable Arrest Warrant for Defendant Chase, based on nine charges arising from his alleged involvement in a July 5, 2024 violent armed pharmacy robbery. *See* Exhibit 3 (Arrest Warrant) and Exhibit 4 (Maryland Judiciary Case Search Records). During the July 5 robbery, a suspect matching Defendant Chase's physical appearance, including distinctive tattoos visible on surveillance video, brandished a black handgun and struck a pharmacy staff member while demanding that staff show him where narcotics were located. The suspects stole over 170 medications with an estimated value of over $50,000. Defendant Chase and his co-conspirators fled in a white BMW sedan with a damaged passenger-side mirror, which appeared to be the same vehicle linked to the Ramdass Pharmacy armed robbery a few weeks earlier. A GPS tracking device in one of the stolen pharmaceutical bottles was followed to the now-abandoned BMW.

Less than three weeks later, Defendant Chase was arrested in DC with 529 tablets of various kinds of oxycodone and oxycodone-acetaminophen mixed, over $11,000 in cash, and a loaded black handgun, leading to the instant case.

D. **The Danger to the Community Created by Defendant Chase's Release Weighs in Favor of Detention**

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'"

20

*United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).  This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence.  *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

Defendant Chase poses an obvious and articulable threat to the community.  Specifically, as it relates to the offenses charged here, the threat posed by Defendant Chase is that he will continue to engage in the trafficking of highly addictive and dangerous narcotics while armed with at least one firearm.  And if the Court considers the totality of Defendant Chase's criminal history and characteristics, his flagrant disregard for the law and repeated acts of violence discussed herein further underscore the necessity for pre-trial detention to protect the community.

## CONCLUSION

Defendant Chase's past conduct is marked by violence, disregard for the law and the safety of the community, and repeated failures to comply with court-ordered conditions.  He has amply demonstrated that he is unwilling to comply with the most basic condition of release, which is refraining from committing *new* crimes, and has continued to violate the law and actively harm the community even when subject to high levels of supervision (*i.e.*, monitored pre-trial home detention).  Accordingly, Defendant Chase's dangerousness alone supports detention.  However, given his history of fleeing to avoid the consequences of his actions and the serious criminal charges facing Defendant Chase, not only in this matter pending before the Court but also the cases in DC Superior Court, Prince George's County, Maryland, and Anne Arundel County, Maryland, there is also a substantial risk of flight should Defendant Chase be released.  He has already fled

from one jurisdiction to avoid trial and to continue engaging in dangerous and destructive criminal behavior. No conditions or set of conditions can guarantee that he will not do so again if given the opportunity.

Because all four of the Bail Reform Act factors weigh heavily in favor of pretrial detention, the United States respectfully requests that the Court issue an Order granting the United States' motion that Defendant Chase be held without bond pending trial.

Respectfully submitted,

EDWARD R. MARTIN, JR.
United States Attorney
D.C. Bar No. 481866

By:    /s/ Emily Reeder-Ricchetti
EMILY REEDER-RICCHETTI
DC Bar No. 252710
Special Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
202-834-0553
Emily.Reeder-Ricchetti2@usdoj.gov